**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Juan PEREZ, Caridad Rodriguez a/k/a Aida Guzman, Indiana Chappoten, Lazaro Martinez, Defendants–Appellants.**

No. 90–5250.

United States Court of Appeals,
Eleventh Circuit.

March 31, 1992.

Glen Koch, Miami, Fla., for Juan Perez.

Paul G. Finizio, Montero, Finizio & Velasquez, Ft. Lauderdale, Fla., for Caridad Rodriguez.

Robert M. Duboff, Miami, Fla., for Indiana Chappoten.

Theodore J. Sakowitz, Federal Public Defender, John Weinberg, James R. Gailey,

Alison Marie Igoe, Asst. Federal Public Defenders, Miami, Fla., for Lazaro Martinez.

Frank Bowman, Dawn Bowen, Linda Collins Hertz, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before COX, Circuit Judge, DYER * and FRIEDMAN **, Senior Circuit Judges.

PER CURIAM:

Lazaro Martinez, Juan Perez, Indiana Chappoten, and Caridad Rodriguez (collectively referred to as the "defendants") appeal their convictions from the United States District Court for the Southern District of Florida. Martinez and Perez also appeal their sentences. For the reasons discussed below, we affirm.

### I. Facts and Procedural Background

On the evening of October 6, 1989, several boys "hanging around" the Miccosukee Tribal Cultural Center observed a tan van park in front of the Cultural Center's gift shop. The Cultural Center, which is enclosed by a fence, is located on the Miccosukee Indian Reservation and belongs to the Miccosukee Tribe of Indians. The boys, all members of the tribe, saw two men and two women get out of the van. One of the men went into an adjacent public restroom while the others surveyed the parking lot and looked inside the gift shop's windows. A few minutes later, all four individuals returned to the van, which drove away.

The same van returned about fifteen minutes later. Shortly thereafter, one of the boys saw the two men inside the gift shop moving merchandise. The boys then summoned John Osceola and Wayne Billy, two adults who were parked close by. Osceola looked inside the gift shop and saw two men moving things to the back entrance. Osceola and Billy drove their truck

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

to the shop and shined its headlights into the store's front windows. At this point, the two men and two women came out of the Cultural Center's enclosure and headed for the van. One of the men, subsequently identified at trial by Osceola as Juan Perez, placed some objects into the van and got into the driver's seat. After the other three entered the van, it headed east on U.S. Highway 41.

Osceola, Billy, and the boys drove to the nearby tribal police station to report the incident. The police radioed John Holtz, a Miccosukee Tribal Police officer who happened to be patrolling east on Highway 41. Holtz immediately set up a roadblock. Because there were no exits or turnoffs in the area, anyone heading east from the Cultural Center would encounter the roadblock.

Shortly thereafter, a tan van approached the roadblock. Holtz fired a warning shot over the van, which then stopped. Holtz saw one of the men and the two women throwing things out the back of the van. The officers ordered the two men and two women (the defendants) to get out of the van and placed them under arrest. A variety of items from the Cultural Center were found in and around the van. Jewelry and a money bag from the gift shop were located on the highway just outside the van's back window. In the van, the police found more items from the Cultural Center, as well as a pair of bolt cutters and a crowbar which matched the pry marks on the rear entrance to the gift shop. The police also found a purse belonging to Cassandra Osceola, the gift shop manager.

A grand jury returned a three-count indictment against the defendants on October 18, 1989. Count I charged the defendants with burglary under Florida law and the Assimilative Crimes Act (ACA), 18 U.S.C. § 13. Count II charged the defendants with theft under Florida law and the ACA. Count III charged Martinez with assault on a federal officer.[1]

At trial, the jury found all four defendants guilty on both counts I and II. Martinez and Perez were each sentenced to sixty months on count I and thirty-six months on count II. These sentences were to be served consecutively for a total of ninety-six months. Chappoten was sentenced to twenty-four months on counts I and II to be served concurrently. Rodriguez was sentenced to eighteen months on counts I and II to be served concurrently.

On appeal, all four defendants question the district court's subject matter jurisdiction over count II of the indictment, which charged them with theft under Florida law and the ACA. Chappoten and Rodriguez also challenge the district court's denial of their motions for acquittal on counts I and II. Martinez and Perez also appeal the imposition of consecutive rather than concurrent sentences.

## II. Issues on Appeal

1) Whether the district court lacked subject matter jurisdiction over count II of the indictment, which charged the defendants with theft under Florida law and the ACA?

2) Whether the district court erred in denying Chappoten and Rodriguez's motions for acquittal on counts I and II?

3) Whether the district court erred by imposing consecutive sentences upon Martinez and Perez for their convictions on counts I and II?

## III. Contentions of the Parties

The defendants argue that the ACA permits the government to apply state criminal law when Congress has failed to address the conduct charged. When a federal statute is available, however, the district court lacks subject matter jurisdiction over the state law offense under the ACA. In this case, the theft alleged in count II of the indictment falls within 18 U.S.C. § 1163, which prohibits theft from a tribal organization. Accordingly, Florida law and the ACA were not applicable, and the district court lacked jurisdiction over count II.

Chappoten and Rodriguez also assert that the district court erred in denying their motions for acquittal. The evidence on both counts I and II was insufficient to

---

**1.** Count III was subsequently dismissed on the government's motion prior to trial.

prove that the women acted as principals in the burglary and theft. Even under the aiding and abetting theory advocated by the government, the evidence was insufficient to support their conviction.

Martinez and Perez further contend that the district court erred in sentencing them to consecutive terms of imprisonment for counts I and II. The two counts relate to the burglary of and theft from the same structure, involving the same harm, same transaction, and same victim. Under the Sentencing Guidelines, concurrent sentences should be imposed for these counts. The case should be remanded for resentencing.

The United States argues that the defendants stole property from both the Miccosukee Tribe of Indians and Cassandra Osceola. The federal statute cited by the defendants only applies to tribal organizations and does not cover the theft from Osceola. Accordingly, count II properly incorporated Florida law under the ACA.

With respect to Chappoten and Rodriguez, the government contends that the evidence produced against them at trial was overwhelming and that the jury's verdict of guilt should be affirmed.

Finally, the government maintains that the district court properly imposed consecutive sentences on Martinez and Perez for counts I and II. The district court clearly had the authority under the Guidelines to make an upward departure in their sentences. Martinez and Perez do not argue that such a departure was inappropriate under the facts of this case.

## IV. Standard of Review

The subject matter jurisdiction of the district court is a question of law and, therefore, subject to *de novo* review. *See, e.g., United States v. Wilson,* 894 F.2d 1245, 1253 (11th Cir.), *cert. denied* — U.S. ——, 110 S.Ct. 3284, 111 L.Ed.2d 792 (1990). The imposition of consecutive rather than concurrent sentences is also an issue of law subject to plenary review.

When reviewing the sufficiency of the evidence, we must determine whether the evidence adduced at trial, when considered in the light most favorable to the government, proved the defendant's guilt beyond a reasonable doubt. *See, e.g., Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974). All reasonable inferences and credibility judgments must be made in favor of the jury's verdict. *See, e.g., United States v. Kelly,* 888 F.2d 732, 740 (11th Cir.1989).

## V. Discussion

### A. *Subject Matter Jurisdiction*

The Assimilated Crimes Act provides that:

> Whoever within [a special territorial jurisdiction of the United States] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13. Because the Miccosukee Tribal Cultural Center lies within the special territorial jurisdiction of the United States, count II of the indictment applied the ACA and charged the defendants with theft under Florida law.

The ACA, however, may not be used when another federal law criminalizes the exact same conduct as the state law sought to be applied. *See, e.g., Williams v. United States,* 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946). The defendants argue that, because 18 U.S.C. § 1163 criminalizes theft from an Indian tribal organization, the district court lacked jurisdiction over count II based on Florida law and the ACA. While 18 U.S.C. § 1163 does indeed prohibit theft from the Miccosukee Tribe, count II of the indictment charged theft not only from the Miccosukee Tribe but also from Cassandra Osceola personally. The theft of Osceola's purse does not fall within the scope of 18 U.S.C. § 1163. The prosecution, therefore, had two choices—divide count II into two distinct counts (one for the theft from the Miccosukee Tribe and one for the theft from Osceola) or apply Florida law to both thefts via the ACA.

The defendants suggest that it was inappropriate to combine the thefts from the Miccosukee Tribe and Osceola into a single count. They are mistaken. This circuit has approved the "single larceny doctrine," which states that the taking of property from different owners as part of a "continuing impulse, intent, plan, or scheme" may be properly charged as a single larceny. *United States v. Billingslea,* 603 F.2d 515, 520 n. 6 (5th Cir.1979) (quoting 53 A.L.R.3d 401 (1973)).[2] Because the thefts from the tribe and Osceola were clearly part of a single scheme, they were properly combined in count II. Accordingly, because no federal statute criminalized the entire conduct alleged in the indictment, the application of Florida law pursuant to the ACA was appropriate. *See Williams,* 327 U.S. at 717, 66 S.Ct. at 781.

### B. *Motions for Acquittal*

■ As noted above, when reviewing the sufficiency of the evidence, we must determine whether the evidence adduced at trial, when considered in the light most favorable to the government, proved the defendant's guilt beyond a reasonable doubt. All reasonable inferences and credibility judgments must be made in favor of the jury's verdict. In light of this standard and after a careful review of the record, we conclude that the evidence adduced at trial was sufficient to prove Chappoten and Rodriguez's guilt beyond a reasonable doubt.

When the defendants' van first arrived at the Cultural Center, Chappoten and Rodriguez, along with one of the men, surveyed the area and looked in the gift shop windows. In light of subsequent events, the jury could reasonably infer that they were "casing the joint." Later, John Osceola observed the men dragging merchandise towards the rear door of the gift shop. It is reasonable to infer that the women were either loading the goods into the van or maintaining a lookout. After Osceola shined his headlights into the gift shop, all four defendants fled the enclosed area around the gift shop and returned to the van. At the roadblock, Officer Holtz saw Chappoten and Rodriguez throwing the stolen merchandise out the van's rear window. The gift shop's money bag, jewelry, clothing, and a crowbar matching the one used in the burglary were found in and around the van in which the women were riding. Finally, the jury could reasonably infer that Martinez and Perez would not have brought along two innocent and unwilling witnesses to observe their crimes.

From this evidence, the jury could reasonably conclude that Chappoten and Rodriguez were guilty of burglary and theft as charged in counts I and II—either as principals or under the aiding and abetting theory.[3] Accordingly, the district court's denial of Chappoten and Rodriguez's motions for acquittal was proper.

### C. *Consecutive Sentences*

■ Martinez and Perez challenge the district court's authority to sentence them to consecutive terms of imprisonment for counts I and II.[4] "The court incorrectly applied the Federal Sentencing Guidelines when it imposed consecutive sentences on counts that, under the guidelines, should have resulted in concurrent terms." (Appellant's Brief at 15).

Pursuant to Section 3D1.1 of the federal Sentencing Guidelines, the district court grouped counts I and II because they involved substantially the same harm (burglary and theft). *See* U.S.S.G. § 3D1.2.

---

2. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3. 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." The district court gave the jury an aiding and abetting instruction in its final charge.

4. Martinez and Perez's suggestion that the district court failed to group counts I and II and, therefore, subjected them to double punishment is meritless. By their own admission, the district court grouped the two counts and then ordered the sentences to be served consecutively. At most, Martinez and Perez are merely restating their initial challenge to the district court's authority to impose consecutive sentences under the Guidelines.

The total offense level for the group was 15. Martinez and Perez both had category VI criminal histories. This produced a guideline range of 41–51 months incarceration for each count. The sentences for these counts would normally be served concurrently. *See* U.S.S.G. § 5G1.2.

The district court chose to depart from the guideline range in light of Martinez and Perez's threat of recidivism and because category VI (the highest category) did not adequately reflect their criminal history.[5] It also noted that the statutory maximum penalty for burglary and theft under Florida law is five years. *See* 18 U.S.C. § 13 (incorporating state penalty provisions under the ACA). To comply with this limit, the district court sentenced Martinez and Perez to 60 months on count I and 36 months on count II to be served consecutively.

Martinez and Perez claim that the imposition of consecutive sentences is contrary to the Sentencing Guidelines. We agree, but their argument misses the point. The issue before us is not whether the Guidelines specifically authorized consecutive sentences in this case—it does not—but rather whether the district court has the authority to *depart* from the Sentencing Guidelines and order that their sentences be served consecutively. We conclude that it does.

Congress has granted district courts the discretion to impose either concurrent or consecutive sentences. "If multiple terms of imprisonment are imposed on a defendant at the same time, ... the terms may run concurrently or consecutively...." 18 U.S.C. § 3584(a). Section 3584(b), however, requires the district court to consider the factors set forth in 18 U.S.C. § 3553(a) when deciding between concurrent or consecutive sentences. Among those factors are the recommended sentence and policy statements of the Sentencing Guidelines. As noted above, the Guidelines recommend concurrent sentences in cases like this.

We explored the apparent conflict between 18 U.S.C. § 3584(a), which grants discretion over concurrent or consecutive sentences, and the Sentencing Guidelines, which constrain that discretion, in *United States v. Fossett*, 881 F.2d 976 (11th Cir. 1989). In *Fossett*, unlike the case at bar, it was the Guidelines that called for the imposition of consecutive sentences. The defendant sought to serve her sentence for escaping from a federal correctional facility concurrently with her original sentence for forgery. The district court refused, and we affirmed. We held that the district court had the authority under 18 U.S.C. § 3584(a) to impose concurrent rather than consecutive sentences, but only if the court followed the procedures for departing from the Sentencing Guidelines. Logic suggests that the converse is also true. We, therefore, hold that the district court has the authority to impose consecutive rather than concurrent sentences if it follows the procedures for departing from the Guidelines.

We note that the Ninth Circuit recently reached the same conclusion that we adopt today in *United States v. Pedrioli*, 931 F.2d 31 (9th Cir.1991). Like this court in *Fossett*, the Ninth Circuit had previously held that, while the Guidelines appeared to require the imposition of consecutive sentences under some circumstances, the district court nevertheless retained the discretion to depart from the Guidelines and order that the sentences be served concurrently. *United States v. Wills*, 881 F.2d 823, 826 (9th Cir.1989). In *Pedrioli*, the court then extended its holding in *Wills* to permit the imposition of consecutive rather than concurrent sentences if the district court follows the usual departure procedures. *Pedrioli*, 931 F.2d at 32.

## VI. Conclusion

For the reasons discussed above, the convictions and sentences are affirmed.

AFFIRMED.

---

**5.** Martinez and Perez do not challenge the propriety of the district court's decision to depart. Accordingly, we do not address that issue.